UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

LIBORIO CANALES, JR., et al.,           )
                                        )
    Plaintiffs                          )
                                        )
v.                                      )  2:11-cv-00181-JAW
                                        )
UNIVERSITY OF PHOENIX, INC.,            )
                                        )
    Defendant                           )

## RECOMMENDED DECISION

Three plaintiffs, ages 68, 49 and 55, have brought suit against the University of Phoenix, Inc., alleging employment discrimination based upon age under the federal age discrimination statutes. All three plaintiffs were hired to teach graduate business and management courses at Defendant's Europe campus. The three plaintiffs are all military veterans and worked for Phoenix in the military environment as civilian faculty members in Europe. Plaintiffs allege that at various points in time in early 2009 they were forced to resign from the University of Phoenix as a result of "the consistent hostile treatment they received by [their supervisors] because of their age." (Compl. ¶ 28.) Defendant has now moved to sever two of the plaintiffs, Canales and Fears, and either stay or dismiss the case as to those two plaintiffs in order to compel arbitration as set forth in the employee handbook applicable to these two plaintiffs. Plaintiff Carr is not alleged to have signed an acknowledgement form regarding the employee handbook and therefore the pending motion is not directed at her. I now recommend that the Court grant the Motion to Compel Arbitration and Dismiss (Doc. No. 11) as to Canales and Fears.

**Factual Background**

Canales began his employment with University of Phoenix on or about October 7, 2004, as an adjunct faculty member and was hired as full-time faculty on July 13, 2005. Fears began

his employment on May 3, 2005.  Both men are United States citizens who were hired to work in Europe.  On various dates throughout his employment, Canales acknowledged electronic receipt of versions 14, 15, 16, and 17 of The Apollo Group Employee Handbook and Fears acknowledged electronic receipt of versions 15, 16, and 17 of the same handbook.   The most recent version, version 17 (Doc. No. 12-8), sets forth the following provisions that are most relevant to the instant dispute, pertaining to the company's dispute resolution policy.

The dispute resolution policy is "intended to create the exclusive means by which claims asserted by either an employee or the Company, involving . . . any other personnel related dispute, shall be decided and finally resolved." (Doc. No. 12-8: Apollo Group, Inc., US Employee Handbook v.17.2, 2008, p. 96.)  All covered disputes are to be resolved by the employee handbook procedures and the result is final and binding on both the Company and the employee.  Id.  Claims and disputes under the policy are either level one or level two disputes, with differing procedures depending upon the nature of the dispute.  Id.  Claims of employment discrimination or harassment pursuant to state or federal law are covered disputes assigned to level one.  Id.  The fifth, and final, step for level one disputes is binding arbitration.  (Id., p. 98.)  Pursuant to the policy, the decision of the arbitrator is final and binding as provided by the Federal Arbitration Act, 9 U.S.C. §§ 1-6.  (Id., p. 99.)  By the terms of the employee handbook both sides waive their right to trial, with or without a jury.  Id.  The handbook also provides: "The policies set forth within may be changed or eliminated as deemed necessary by the Company at any time." (Doc. No. 20-1, 20-2, Foreword, Apollo Group Inc., US Employee Handbook  v.17.2008.)  Revisions or exceptions to the policy can only occur if in writing and approved by the President of Apollo Group, Inc.  Id.

Both Fears and Canales affixed their electronic signature to a document acknowledging they had received a copy of the 2008 handbook. (Doc. Nos. 12-4, 12-7.) The one-page acknowledgement contained an outline of the contents of the handbook, including a bulleted section entitled "Dispute Resolution Policy & Procedure." Id. The handbook itself was at least 99 pages in length and was received via an internet link to an electronic version of the document. (Doc. No. 12-8.)

**Applicable Legal Framework**

The First Circuit has held that a party who attempts to compel arbitration pursuant to the Federal Arbitration Act must show that (1) a valid agreement to arbitrate exists, (2) that the movant is entitled to invoke the arbitration clause, (3) that the other party is bound by that clause, and (4) that the claim asserted comes within the clause's scope. Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co., 774 F.2d 524, 528 (1st Cir. 1985) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)). "However, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Large v. Conseco Fin. Serv. Corp., 292 F.3d 49, 52 (1st Cir. 2002) (quoting AT&T Techs. V. Commc'n Workers of Am., 475 U.S 643, 648 (1986)).

"When a party opposes a motion to stay pending arbitration on the ground that the parties never agreed to arbitrate, a federal court should apply the summary judgment standard." Snow v. BE & K Constr. Co., 126 F. Supp. 2d 5, 7 (D. Me. 2001). "A court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been

made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." Id. (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3rd Cir. 1980)). Essentially a court's order that the parties must submit to binding arbitration is a "summary disposition" of the factual issue of whether there is a valid contract that contains a binding agreement to arbitrate, and any disputed facts should be viewed in the light most favorable to the party opposing arbitration. Id. In other words, the presumption in favor of arbitration has no applicability to the question of whether a contract containing an arbitration clause exists in the first place. Granite Rock v. Int'l Bhd. of Teamsters, ___ U.S. ___, 130 S.Ct. 2847, 2855- 2856 (2010).

**Discussion**

This case does not present any issues regarding the scope of the arbitration agreement or the waiver of the arbitration clause. The sole issue raised in opposition to the motion to compel arbitration is Plaintiffs' contention that there was never a valid agreement to arbitrate. Canales and Fears maintain that because the employee handbook was a unilateral contract, subject to revision at any time in the discretion of the employer, they cannot be found to have waived their right to enforce statutory federal claims in federal court based upon the mere fact that they affixed their electronic signatures to acknowledge receipt of the internet link giving them access to the handbook. Plaintiffs also argue that the applicability of the Federal Arbitration Act to this dispute, as set forth in the employee handbook, is highly suspect because Arizona, the state where Defendant maintains its residence, specifically exempts employment contracts from arbitration and additionally, since 2010 the Defense Appropriations Act prohibits the award of contracts exceeding one million dollars to any company, such as Phoenix, that forces its employees to submit to binding arbitration of Title VII and sexual assault-related tort claims.

(Plaintiffs concede that the Defense Appropriation Act does not extend to age discrimination cases.) Finally, Plaintiffs argue that certain provisions within the employment handbook are void because those provisions are in contravention of European laws and this Court should apply those European laws to the dispute now before it. I will address these three arguments in reverse order.

Defendant contends that issues related to validity of certain terms of the employee handbook "contract," such as the provision denominating Plaintiffs' employment as "at will," are themselves issues that would be subject to arbitration. Where a challenge does not relate directly to the arbitration provision of the contract, the contractual issue must be submitted to the arbitrator *if* there is an enforceable agreement to arbitrate. Buckeye Check Cashing v. Cardegna, 546 U.S. 440, 445-46 (2006). Thus, whether Italian, German, Arizona, or Maine law applies to the contract is a question properly within the scope of the arbitrator's role, if a valid agreement exists. At this stage of the proceeding, Defendant has the better argument regarding this issue. Most significantly Plaintiffs have neither argued nor cited any authority for the proposition that Italian or European law prohibits the enforcement of arbitration agreements in employment contracts, and thus their arguments about the applicability of Italian law to the central issue in dispute in this motion gains them nothing.

Likewise Plaintiffs take nothing from their policy arguments relating to Arizona law and the reason why Defendant eschews its applicability in its employee handbook or from their arguments concerning certain recent congressional pronouncements about the efficacy of arbitration as a means of resolving employment disputes. No one is arguing that either Arizona law or Department of Defense initiatives passed in 2010 are applicable to this case. Nothing in the text or legislative history of the federal age discrimination statutes makes those claims

inappropriate for arbitration. Indeed, the Supreme Court has held that an ADEA claim can be subject to compulsory arbitration. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 27, 35 (1991). This motion then must be decided based upon whether or not Canales and Fears and the University of Phoenix entered into a valid contractual undertaking to arbitrate employment discrimination disputes when the Plaintiffs acknowledged receipt of the employee handbook.

Both parties cite Maine law regarding contractual undertakings as evidenced by employee handbooks, but neither offers an explanation of precisely why Maine law would govern the employment contracts of Canales and Fears, neither of whom appear to have any employment connection to Maine. Nevertheless, "general principles of state contract law control the determination of whether a valid agreement to arbitrate exists," Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005), and in the absence of any suggestion that another state's law controls, I will apply the general principles of Maine employment contract law to the undisputed facts of this case.

Relying primarily upon Snow v. BE&K Construction Co., 126 F. Supp. 2d 5 (D. Me. 2001), Canales and Fears raise arguments concerning the alleged unilateral nature of the employee handbook, arguing that under applicable state contract law an agreement to arbitrate was never formed. Clearly an employee handbook containing workplace policies and rules can constitute or supplement the terms of a binding contract under the right circumstances, provided the normal rules of contract law are met. Id. at 12-13 (citing Larrabee v. Penobscot Frozen Foods, Inc., 486 A.2d 97 (Me. 1984)). Those rules of contract law are primarily the requirements of consideration, mutual assent, either express or implied, to be bound by the terms of the contract, and sufficiently definite terms to enable a court to determine the meaning of the contract. Id. at 13.

The arbitration provision at issue in this case expressly provides that both the employer and the employees are mutually bound by the arbitration process. Plaintiffs note, however, that the employer may alter the policies by giving written notice. (Pls.' Resp. at 7, Doc. No. 15.) Nevertheless, the ability of the employer to amend its policies does not necessarily render the arbitration agreement unenforceable. Brackett v. Gen. Dynamics Armament, No. 2:10-cv-00176-DBH, 2010 WL 2628525, *3 (D. Me. June 25, 2010) (order on Mot. To Compel Arbitration and Dismiss Proceedings). There is no suggestion that the 2008 version of the employee handbook has been subject to any written modifications. Mutuality of the obligation is thus satisfied when both the employee and the employer have an obligation to submit to arbitration and are bound by its results. Soto v. State Indus. Prods., Inc., 642 F.3d 67, 76 (1st Cir. 2011).

Furthermore, in this case as in Snow, consideration can take the form of a promise asking for performance, rather than a reciprocal promise. 126 F. Supp. 2d at 13. Thus Canales's and Fears's promises to continue working for the University of Phoenix, coupled with Phoenix's promise to maintain them as at-will employees and to abide by the booklet's terms, are sufficient consideration to form a valid contract.

Finally, the terms of the dispute resolution process are sufficiently clear that this Court can enforce them. The dispute resolution policy is the "exclusive means" of resolving employment disputes such as these. Furthermore, there is no question but that both Plaintiffs acknowledged receipt of the policy and knew or should have known of their legal obligation regarding the arbitration of disputes. That the handbook was provided in electronic format and that receipt was acknowledged with an electronic signature do not make the handbook's terms any less binding and Plaintiffs do not cite any case law from Maine or any other jurisdiction to

suggest otherwise. The plaintiffs cannot legitimately claim that they did not receive notice of the clearly worded policy. The terms of the policy are set forth in the handbook and Plaintiffs were directed to the policy by the bulleted paragraphs in the acknowledgement form they signed. One Plaintiff is an attorney and one is a college professor with management and business experience. There are no "trick" provisions in this handbook that a sophisticated business person would be likely to miss.

**Conclusion**

Based upon the foregoing I recommend that the Court grant the motion to compel arbitration and dismiss this complaint, as to Plaintiffs Canales and Fears only.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 4, 2012