UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LIBORIO CANALES, JR., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) 2:11-cv-00181-JAW |
| | ) |
| UNIVERSITY OF PHOENIX, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER REJECTING THE RECOMMENDED DECISION
OF THE MAGISTRATE JUDGE**

Concluding that the employer's arbitration agreement contains an illusory promise to arbitrate and is unenforceable, the Court rejects the Magistrate Judge's Recommended Decision and denies the Defendant's motion to compel arbitration.

**I.    BACKGROUND**

**A.    The Motion to Compel Arbitration**

On September 28, 2011, the University of Phoenix, Inc. (Phoenix) moved for an order compelling arbitration and dismissing, or in the alternative, staying the proceedings as to the claims of Liborio Canales, Jr. and Joe M. Fears. *Def.'s Mot. to Compel Arbitration and Dismiss or, in the Alternative, Stay Proceedings as to the Claims of Pls. Canales and Fears* (Docket # 11); *Def.'s Mem. of Law in Support of Mot. to Compel Arbitration and Dismiss or, in the Alternative, Stay Proceedings as to the Claims of Pls. Canales and Fears* (Docket # 12) (*Def.'s Mem.*).  On October 19, 2011, the Plaintiffs responded and moved for a determination of foreign law.  *Pls.'*

*Opp'n to Def.'s Mot. to Compel Arbitration and Dismiss or, in the Alternative, Stay Proceedings as to the Claims of Pls. Canales and Fears Incorporated with Pls.' Mot. for the Ct. to Make a Determination of Foreign Law Pursuant to F. R. Civ. P. 44.1* (Docket # 15).  Phoenix replied on November 14, 2011.  *Reply in Support of Def.'s Mot. to Compel Arbitration and Dismiss or, in the Alternative, Stay Proceedings as to the Claims of Pls. Canales and Fears* (Docket # 20).

      B.     **The Recommended Decision**

On January 4, 2012, the United States Magistrate Judge filed with the Court her Recommended Decision.  *Recommended Decision* (Docket # 21).  On January 18, the Plaintiffs objected to the Recommended Decision.  *Pls.' Objections and Mem. of Law with Regard to Magistrate Judge's Proposed Findings and Recommended Decision as to Def.'s Mot. to Compel Arbitration and Dismiss Claims of Canales and Fears* (Docket # 22) (*Pls.' Objection*).  On February 2, 2012, Phoenix filed its response.  *Def.'s Reply to Pls.' Objections and Mem. of Law with Regard to Magistrate Judge's Proposed Findings and Recommended Decision as to Def.'s Mot. to Compel Arbitration and Dismiss Claims of Canales and Fears* (Docket # 23) (*Def.'s Resp.*).

      C.     **Joseph Fears Is Dismissed**

On February 13, 2012, the Court dismissed Mr. Fears as a plaintiff, leaving only Mr. Canales and Ms. Carr as plaintiffs.  *Order Regarding Pl. Joe M. Fears* (Docket # 26).  Phoenix's current motion is directed solely against Mr. Canales.

## II.   DISCUSSION

Following the Magistrate Judge's Recommended Decision, one outstanding issue merits discussion—Mr. Canales's claim that, because it contains unilateral modification provisions, the arbitration provision of the employee handbook creates an illusory promise to arbitrate and thus is not enforceable.[1]

### A.   The Positions of the Parties and the Magistrate Judge

#### 1.   The Recommended Decision

In her Recommended Decision, the Magistrate Judge rejected the Plaintiffs' argument that because the employee handbook allowed the employer to alter its policies by putting changes in writing, the promise to arbitrate was illusory. *Recommended Decision* at 7.  Citing *Brackett v. Gen. Dynamics Armament & Tech. Prods., Inc.*, No. 2:10-cv-176-DBH, 2010 U.S. Dist. LEXIS 64016, at *6 (D. Me. Jun. 25, 2010), the Magistrate Judge observed that "the ability of the employer to amend its policies does not necessarily render the arbitration agreement unenforceable." *Recommended Decision* at 7.  The Magistrate Judge noted that there is "no suggestion that the 2008 version of the employee handbook has been subject to any written modifications" and that "[m]utuality of the obligation is thus satisfied when both the employee and the employer have an obligation to submit to arbitration and are bound by its results." *Id.*  Finally, she wrote that "consideration can take the form of a promise asking for performance, rather than a reciprocal promise" and

---

[1] Mr. Canales also questioned whether the National Labor Relations Board decision, *D.R. Horton, Inc. and Michael Cuda*, No. 12-CA-25764, 2012 NLRB LEXIS 11 (Jan. 3, 2012), affects the enforceability of the arbitration agreement here.  As the Court concludes that the agreement is not enforceable for another reason, it does not reach the *D.R. Horton* issue.

3

that Mr. Canales's "promise[] to continue working for [Phoenix], coupled with Phoenix's promise to maintain [him] as at-will employee[] and to abide by the booklet's terms, are sufficient consideration to form a valid contract." *Id.*

### 2. Liborio Canales's Objection

Mr. Canales focuses on the language in the employee handbook that states "any revisions or exceptions to the policies contained in this Employee Handbook must be in writing and approved by the President of Apollo Group, Inc. or his authorized designee." *Pls.' Objection* at 13. In his objection, Mr. Canales contends that the employee handbook in this case "contains the same illusory consideration as the employee handbook in *Snow* [*v. BE & K Constr. Co.*, 126 F. Supp. 2d 5 (D. Me. 2001)]." *Pls.' Objection* at 10. He urges the Court to follow *Snow*. *Id.* Next, Mr. Canales asserts that by relying on *Brackett*, the Magistrate Judge improperly infused an unconscionability analysis into the illusory promise argument, thereby setting a "much higher" hurdle than appropriate. *Id.* at 10-11. Arguing that "an illusory promise is not consideration," Mr. Canales maintains that there was no valid contract. *Id.* at 11.

### 3. Phoenix's Response

In response, Phoenix urges the Court to conclude that the Magistrate Judge properly decided the illusory promise issue. *Def.'s Resp.* at 5-6. Phoenix contends that *Snow* is different on its facts from this case and rejects Mr. Canales's effort to "trivialize" First Circuit precedent. *Id.* at 6. Phoenix highlights two district court cases within the First Circuit that it says addressed the illusory promise issue and

4

resolved the question against Mr. Canales's position. *Def.'s Resp.* at 6-7 (citing *Soto v. State Indus. Prods., Inc.*, 642 F.3d 67 (1st Cir. 2011); *Brackett*, 2010 U.S. Dist. LEXIS 64016).[2]  Next, Phoenix cites four additional district court cases within the First Circuit that it says support the Magistrate Judge's recommendation. *Id.* at 7.

B.   Discussion

The Phoenix Employee Handbook Acknowledgement Form contained the following clause:

> Since the information, policies and benefits described in the Employee Handbook are necessarily subject to change, I acknowledge that revisions may occur, and I understand that such revisions may supersede, modify or eliminate existing policies.  I further understand and agree that I will be bound by any such revisions during the term of my employment with Apollo Group.  I further understand that any revisions or exceptions to the policies contained in this manual must be in writing and approved by the President of the Company.

*Def.'s Mem.* Attach. 1 *Employee Handbook Acknowledgement Form* at 1.  To determine whether the parties entered into an enforceable agreement to arbitrate, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 19 (1st Cir. 1999).  Under Maine state law, an employee handbook containing workplace policies and rules may constitute a binding contract.[3]  *Barrera v. Town of Brownville*, 139 F.

---

[2] In response to Mr. Canales's objection, Phoenix accuses him of attempting to "trivialize two of the First Circuit cases cited by Defendants." *Def.'s Resp.* at 6.  Phoenix cites *Soto-Alvarez v. Apartment Invest. & Mgmt. Co.*, 561 F. Supp. 2d 228 (D.P.R. 2008) as one of the supposedly trivialized cases. *Id.*  But Mr. Canales's objection did not refer to *Soto-Alvarez*; his objection referred to *Soto v. State Indus. Prods., Inc.*, 642 F.3d 67 (1st Cir. 2011).

[3] As the Magistrate Judge noted, there is no particular reason to apply Maine law to this dispute given that the contract was not formed in Maine and Mr. Canales has no known connection to

Supp. 2d 136, 141 (D. Me. 2001); *Snow*, 126 F. Supp. 2d at 12-13 (citing *Larrabee v. Penobscot Frozen Foods, Inc.*, 486 A.2d 97 (Me. 1984)). To qualify as a contract under Maine law, the employee handbook "requires consideration to support it, and any promise not supported by consideration is unenforceable." *Snow*, 126 F. Supp. 2d at 13 (quoting *Whitten v. Greeley-Shaw*, 520 A.2d 1307, 1309 (Me. 1987)). "[A]n illusory promise is not consideration." *Snow*, 126 F. Supp. 2d at 15.

In *Snow*, the district court applied Maine contract principles and concluded that the employee booklet at issue included a disclaimer that rendered the promise to arbitrate illusory. 126 F. Supp. 2d at 14-15. The employer in *Snow* unsuccessfully argued that there was mutuality of consideration because, in exchange for the employee's agreement to arbitrate, the employer had promised to maintain the employee as an at-will employee and to abide by the arbitration provisions. *Id.* at 13. But the *Snow* Court correctly rejected this claim because the employer had expressly stipulated that the arbitration provision was not an agreement and had reserved the right to change or terminate the program. *Id.* at 13-15. As Phoenix observes, the breadth of the provision in *Snow* substantially exceeded the provision in this case by containing "a broad disclaimer stating that it is not an employee agreement and that [the employer] reserves the right to modify or discontinue the alternative dispute resolution program at any time." *Id.* at 10. Also, in *Snow*, the employee never signed or otherwise affirmatively consented to the terms of the booklet. *Id.* at 15. The district court noted that the employer in

---

Maine. *Recommended Decision* at 6. The Court uses Maine state contract law as a proxy for "ordinary state-law principles." *First Options*, 514 U.S. at 944.

*Snow* was trying to "have its cake and eat it too" and concluded that it would be "fundamentally unfair" to hold the employee to the terms when the employer "retains its ability to evade the booklet's terms entirely." *Id.*

The district court in *Snow* was thus troubled by three factors: (1) the employer disclaimed that the provisions in its employee handbook constituted an employee agreement; (2) the employee had not signed anything to confirm her consent to the terms of the employee handbook; and (3) the employer reserved the right to change or discontinue the arbitration program. *Id.* at 14-15. Applying the same factors, the Court turns to the arbitration agreement provision in the employee handbook. Here, the Phoenix employee handbook binds both the employer and the employee:

> All covered disputes shall be resolved pursuant to these procedures and the result is final and binding on both the Company and the employee.

*Def.'s Mem.* Attach. 8 *Employee Handbook* at 3. The arbitration provisions are not one-sided; either the employee or the employer may demand binding arbitration and the arbitrator's decision is final and binding on both the employee and employer. *Id.* at 5-6. Phoenix, unlike the employer in *Snow*, never disavowed the binding nature of the arbitration agreement.

Furthermore, unlike Ms. Snow, Mr. Canales electronically signed the handbook acknowledgement. The *Snow* Court was disturbed by the absence of evidence that the employee ever agreed to arbitrate her dispute. *Id.* at 13 ("A

7

manifestation of mutual assent, either express or implied, is not immediately apparent in this case"). Here, there is no lack of consent to the existing terms.

Nevertheless, Mr. Canales's most salient point is the legal effect of Phoenix's reservation of the right to unilaterally change or eliminate the terms of the Employee Handbook without any waiting period or notice to the employee. This is an unusual provision. As the district court observed in *Brackett*, the right of an employer to amend employee policies upon thirty-days notice is "ordinary." *See Brackett*, 2010 U.S. Dist. LEXIS 64016, at *6. The significance of a notice requirement is that it gives the employee an opportunity to decide whether to continue working under the new provision; if the employee continues to work with knowledge of the conditions, the new condition becomes a contractual obligation. *See Snow*, 126 F. Supp. 2d at 12; *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 173-74 (5th Cir. 2004) (enforcing arbitration agreement where defendant company required to give notice of proposed change because "notice of the change in terms can be understood as an invitation to enter into a relationship governed by the new terms"); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 (3d Cir. 2002) (enforcing employer policy that required changes to be in writing, a copy provided to employees, and employees given opportunity to accept changes by continuing employment); *see also Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000) (not enforcing arbitration agreement where employer's arbitrator retained unlimited right to modify arbitration rules without employee notice or consent).

8

Here, the Employee Handbook contained no notice requirement at all. Although Phoenix bravely contends that it is required to give notice to the employee, *Def.'s Resp.* at 6 n.5, Phoenix concedes—as it must—that neither the Employee Handbook nor the Acknowledgement mentions any such requirement. Phoenix nevertheless asserts that "the purpose of requiring handbook modifications to be in writing is so that employees may be given notice of them." *Id.* Further, it says that "this is Defendant's common practice." *Id.* Maybe. But the "in writing" requirement could as easily make certain that Phoenix has documented the change for its own internal records and there is nothing in the Employee Handbook to require Phoenix to continue the practice of giving notice. The Court agrees with Mr. Canales that there is no contractual term requiring employee notice of changes to the arbitration agreement.

Generally, an arbitration agreement will be enforced so long as there are "reasonable restrictions" on amendment rights. *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 478-79 (10th Cir. 2006) (enforcing an arbitration agreement that required the employer to give ten-days notice and prevented the employer from applying new rules to pending claims). The problem is that "where one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, if the other party can suddenly change the terms of the agreement to avoid arbitration, then the agreement was illusory from the outset." *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012).

9

Accordingly, where the employer reserves the right to make unilateral changes in an employee contract without giving the employee an opportunity to decide whether to accept those new terms by continuing employment, courts have generally concluded that the incorporated arbitration agreement is illusory and unenforceable.  *Id.* at 206 (finding arbitration clause illusory where "[i]n effect, the agreement allows [the employer] to hold its employees to the promise to arbitrate while reserving its own escape hatch"); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) ("[A]n arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory"); *Floss v. Ryan's Family Steak Houses*, 211 F.3d at 314 (finding arbitration agreement to be "fatally indefinite" and illusory because employer "reserved the right to alter the applicable rules and procedures"); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999) (concluding that an employer's reserved right to change the arbitration rules in whole or in part without notice constituted an illusory promise); *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1133 (7th Cir. 1997) (employer's retention of right to change or revoke agreement "at any time and without notice" rendered illusory the promise to arbitrate); Michael L. DeMichele & Richard A. Bales, Unilateral-Modification Provisions in Employment Arbitration Agreements, 24 HOFSTRA LAB. & EMP. L. J. 63 (2006) (arguing that courts should not compel arbitration where employers have retained the unilateral, unrestricted right to modify a contract containing an arbitration agreement).[4]

---

[4] *But see Betts v. SGE Mgmt.*, LLC, 402 Fed. Appx. 475, 478 (11th Cir. 2010) (finding that under Texas law, "as long as an arbitration agreement is part of a larger contractual relationship, even

10

The cases cited by Phoenix are not to the contrary. The illusory consideration argument rejected by the First Circuit in *Soto* was premised on the mutual obligation of the employee and employer to arbitrate, not the employer's right to unilaterally modify the arbitration provision. 642 F.3d at 76-77 ("We will not impose mutuality of remedy as a requirement of consideration for arbitration agreements under Puerto Rico law"). In *Soto*, the First Circuit simply did not address the illusory consideration issue that is critical here.[5]

The district court decision in *Brackett* is readily distinguishable from the facts in this case. *Brackett* featured an agreement that required thirty-days notice before the employer could amend employment policies and the *Brackett* Court had analyzed the agreement under contract unconscionability, not illusory consideration. 2010 U.S. Dist. LEXIS 64016, at *5-6.

The remaining district court cases cited by the Defendant are no more instructive. Those courts did not address the same illusory promise issue because none of the employers in the cited cases had reserved the unfettered right to change their arbitration promise at any time with no notice. Some did not contain similar employer disclaimers reserving the right to amend. *See Jorge-Colon v. Mandara Spa P.R., Inc.*, 685 F. Supp. 2d 280, 283-85 (D.P.R. 2010) (the employment contract

---

provisions that create a unilateral right to opt out of arbitration cannot undermine the consideration of the underlying contract or the promises to arbitrate") (citation and internal punctuation omitted).

[5] As earlier noted, Phoenix cites *Soto-Alvarez*, a district court case from Puerto Rico, as authority for its motion to compel arbitration. *Def.'s Resp.* at 6-7 (citing *Soto-Alvarez*, 561 F. Supp. 2d at 228). The *Soto-Alvarez* case, however, is of little assistance because the district court never addressed an illusory consideration issue. 561 F. Supp. 2d at 231 ("[t]he evidence in the record shows that the arbitration agreement between the parties [wa]s a valid contractual obligation under Puerto Rico law, and Plaintiff . . . presented no arguments to the contrary").

11

did not include a disclaimer giving the employer the right to not be bound to arbitration); *Corion Corp. v. Gih-Horing Chen*, No. 91-11792-Y, 1991 U.S. Dist. 18395, at *16-23 (D. Mass. Dec. 27, 1991) (where employer denied contract existed and employee sought arbitration, court reviewed several factors and noted that employer's retention of right to unilaterally modify terms favored employer's no-enforceable-contract argument, but held that other factors and subsequent employer conduct created enforceable contract). Other cases cited by Phoenix merely stand for the general proposition, not at issue here, that consideration can take the form of a mutuality of promises to arbitrate. *See Gonzalez v. CE Group Adm'rs, Inc.*, 321 F. Supp. 2d 165, 169 (D. Mass 2004) (the mutual promises of employer and employee in arbitration agreement constituted sufficient consideration); *DeLuca v. Bear Stearns & Co.*, 175 F. Supp. 2d 102, 110 (D. Mass. 2001) (the exchange of promises to arbitrate was sufficient consideration where the preexisting legal duty to arbitrate was uncertain and subject to change). The district court in *DeLuca* was careful to observe that "a promise that binds one to do nothing at all is illusory and cannot be consideration." 175 F. Supp. 2d at 112.

Consistent with *Snow*, the Court concludes that because Phoenix retained the unfettered right to amend the terms of the arbitration agreement with its employees, the arbitration agreement was illusory and unenforceable.

### III. CONCLUSION

The Court has reviewed the Magistrate Judge's Recommended Decision, together with the entire record, and has made a *de novo* determination of all

matters adjudicated by the Magistrate Judge's Recommended Decision. For the reasons set forth in this opinion, the Court REJECTS the Recommended Decision of the Magistrate Judge and DENIES Defendant's Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Proceedings as to the Claims of Plaintiffs Canales and Fears (Docket # 11).

    SO ORDERED.

                      /s/ John A. Woodcock, Jr.
                      JOHN A. WOODCOCK, JR.
                      CHIEF UNITED STATES DISTRICT JUDGE

Dated this 5th day of April, 2012